David S. Gingras, #021097
**Gingras Law Office, PLLC**
4072 East Mountain Vista Drive
Phoenix, AZ 85048
David.Gingras@webmail.azbar.org
Tel.: (480) 639-4996
Fax: (480) 668-3623

Attorneys for John/Jane Doe

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| In re:<br><br>GORILLA COMPANIES LLC, et al.,<br><br>Debtor.<br><br>Filing applies to:<br><br>GORILLA COMPANIES LLC ☐<br><br>PROFESSIONAL EVENT MANAGEMENT LLC ☐<br><br>GORILLA FUEL LLC ☐<br><br>BLUE ROOM CREATIVE LLC ☐<br><br>ALL DEBTORS, ☒ | In Proceedings Under Chapter 11<br><br>Case No. 02:09-bk-02898-RJH<br>Case Nos: 02:09-bk-02901-CGC<br>02:09-bk-02903-GBN<br>02:09-bk-02905-CGC<br><br>(Jointly Administered)<br><br>**JOHN/JANE DOE's *EMERGENCY* MOTION FOR CLARIFICATION/MODIFICATION OF PROTECTIVE ORDER AND, ALTERNATIVELY, FOR EMERGENCY RELIEF FROM ORDER**<br><br>Hearing Date: TBA<br>Hearing Time: TBA |

Pursuant to Fed. Bankr. R. 7026, 9014(c) and Fed. R. Civ. P. 26(c) John/Jane Doe ("Doe") respectfully moves this Court for an order clarifying and/or modifying the protective order previously entered in this case on June 3, 2009 (Doc. #171) in the manner and for the reasons explained herein.

In addition and in the alternative, Doe moves this Court for an order pursuant to Fed. Bankr. R. 9024 and Fed. R. Civ. P. 60(b)(3) and 60(b)(6) granting relief from the order dated August 26, 2009 (Doc. #314) on the basis that the order was procured by fraud and/or misrepresentation and that other circumstances justify relief from the Court's order. The factual and legal bases for each of these requests is explained in full below.

## I. BACKGROUND

### A. Debtor vs. Doe—Round #1

The instant dispute involves an attempt by the debtor, GORILLA COMPANIES, LLC ("Gorilla" or "Debtor") to perform an end-run around the spirit and the letter of a protective order entered against Debtor and in favor of Doe by Judge Nielsen in this matter on June 3, 2009 (Doc. #171) and to unlawfully violate Doe's rights in the process. The facts which produced that order and which support the relief requested are as follows.

In November 2008 before this bankruptcy was commenced, Doe created a website with the address www.SaveGorilla.com. Although Doe is the individual responsible for the creation of this site, the actual registration of the domain name was performed through the services of a third party, DOMAINS BY PROXY, INC., ("DBP").

As the name suggests, DBP is a "private registration" service which allows users to create websites privately and without disclosing their personal contact information to the world (as would otherwise be required). By using DBP's service, a registrant who is concerned about their privacy can register a new domain name and, in exchange for a nominal fee, DBP will act as the customer's "proxy" (really, an agent). This service includes listing DBP's contact information in the publicly accessible "WHOIS" record for the customer's site in lieu of the customer's private name/address.

Gingras Law Office, PLLC
4072 E. Mountain Vista Dr.
Phoenix, AZ 85048
(480) 639-4996



The www.SaveGorilla.com site is 100% non-commercial in nature. The site offers no products or services, directly or indirectly. The site contains no links to other sites. The site contains no advertising of any kind and does not suggest or imply any form of sponsorship or endorsement by Debtor or anyone else. The site contains no artwork, logos, banners, or any other form of imagery protected by copyright or trademark law. Put simply, the www.SaveGorilla.com site is purely a forum for speech where interested individuals may go to share their thoughts, opinions, and comments about Debtor on topics such as its "New Logo?", "General Comments", and so forth.

Whats going on at Gorilla - Windows Internet Explorer

http://www.savegorilla.com/

File Edit View Favorites Tools Help

Favorites | Whats going on at Gorilla

What is going on at GORILLA

Speak your mind, without being monitored.

Back to Main Page

Quick Search

Search only in titles:

Search

Advanced Search

Recent Comments

good stuff on General Comments 9/16/2009

Cookie on General Comments 9/15/2009

Bradbaker on General Comments 9/13/2009

Understanding on General Comments 9/13/2009

Last Call on General Comments 9/11/2009

Bradbaker on General Comments 9/11/2009

Resigned & Relieved on General Comments 9/10/2009

Humm Drumm on General Comments 9/10/2009

General Comments

my del.icio.us | My Stumbles | Technorati This! | Digg This

Posted by AYMKM at 12/1/2008 9:28 PM | View Comments (197) | Add Comment

Brady

my del.icio.us | My Stumbles | Technorati This! | Digg This

Posted by AYMKM at 12/1/2008 9:22 PM | View Comments (18) | Add Comment

Robb

my del.icio.us | My Stumbles | Technorati This! | Digg This

Posted by AYMKM at 12/1/2008 9:21 PM | View Comments (12) | Add Comment

New Logo? WTF

I don't understand why you would change something that is so well known, so easy to recognize, has a great reputation, is known for quality, easy to remember and so strong. I don't get it.

my del.icio.us | My Stumbles | Technorati This! | Digg This

Posted by AYMKM at 11/25/2008 11:46 PM | View Comments (8) | Add Comment

Internet | Protected Mode: Off 110%

Gingras Law Office, PLLC
4072 E. Mountain Vista Dr.
Phoenix, AZ 85048
(480) 639-4996

At some point, Debtor became aware of the www.SaveGorilla.com site and apparently took offense at some of the comments posted there by third parties which were critical of Debtor. Doe believes that most, if not all, of these comments are purely opinions entitled to complete First Amendment protection. *See Global Telemedia Int'l, Inc. v. Doe*, 132 F.Supp.2d 1261 (C.D.Cal. 2001) (holding anonymous statements posted on Internet message board which criticized plaintiff's business and management were entitled to First Amendment protection). However, even if one or more statements on the site were defamatory as to Debtor in some way, this would only allow Debtor to take action against the original author(s) who posted the statements, not against Doe. *See generally Global Royalties, Ltd. v. Xcentric Ventures, LLC*, 544 F.Supp.2d 929 (D.Ariz. 2008) (explaining that pursuant to the Communications Decency Act, 47 U.S.C. § 230(c)(1), the host or operator of an interactive website is immune from liability based on statements created by third parties).

Nevertheless, in May 2009 Debtor brought an *ex parte* motion seeking leave from this Court to perform a Rule 2004 examination of DBP and also to issue a subpoena *duces tecum* to DBP requesting information which would reveal Doe's true identity. Immediately upon discovering Debtor's efforts, on May 20, 2009 Doe appeared in this matter and brought an emergency motion (Doc. #149) which requested three things: 1.) permission to proceed anonymously; 2.) a protective order prohibiting Debtor from taking the Rule 2004 examination of DBP; and 3.) an order quashing the subpoena *duces tecum* issued by Debtor to DBP.

Doe's motion explained that pursuant to the Arizona District Court's decision in *Best Western Int'l, Inc. v. Doe*, 2006 WL 2091695 (D.Ariz. 2006), and also pursuant to a similar ruling from the Arizona Court of Appeals in *Mobilisa v. Doe*, 217 Ariz. 103, 170 P.3d 712 (App. 2007), the Debtor's attempt to force DBP to disclose Doe's true identity would violate Doe's right to anonymous speech as protected by the First Amendment. In addition, Doe's motion specifically informed the Court that under the standards set forth in both *Best Western* and *Mobilisa*, as a matter of law Debtor was not entitled to obtain

Gingras Law Office, PLLC
4072 E. Mountain Vista Dr.
Phoenix, AZ 85048
(480) 639-4996

Doe's true identity unless and until it first established the existence of a *prima facie* claim supported by evidence sufficient to defeat a hypothetical Motion for Summary Judgment:

> *Mobilisa* and *Best Western* each require that Debtor demonstrate that it has a viable claim against each anonymous author and that such claim(s) are supported by sufficient evidence to overcome a hypothetical Motion for Summary Judgment. Here, Debtor has offered no explanation whatsoever of the reason why it needs to uncover the identity of Doe or of any other person posting messages on www.SaveGorilla.com. Unless and until Debtor complies with this mandatory step, the First Amendment precludes it from obtaining any information that would expose the identity of Doe.

Doe's Emergency Motion for Protective Order, 5/20/2009, Doc. #148 at 5:26–6:5.

On May 26, 2009, Debtor filed a response (Doc. #156) vigorously opposing Doe's motion. In its response, Debtor admitted that "[t]he crux of the DBP Examination surrounds the identity of the registrant for the domain name www.SaveGorilla.com." Resp. at 6:21–22. However, Debtor argued in purely conclusory terms (without ever explaining or elaborating) that this information was necessary because "[t]he DBP Examination seeks information specifically tailored toward the recoupment of assets by the Debtor, for the benefit of the Estate and creditors." Resp. at 7:14–15.

Due to this Court's vacation, Doe's emergency motion was heard on May 28, 2009 by Judge Nielsen. After oral argument, Judge Nielsen carefully considered Debtor's arguments and rejected them all. Specifically, Judge Nielsen expressly ruled that contrary to Debtor's argument that a "good faith" basis was all that the law required in order to overcome Doe's Constitutional right to anonymity, a higher showing was required by the First Amendment, by the District Court's decision in *Best Western* and by the Arizona Court of Appeals' decision in *Mobilisa*. For those reasons, Judge Nielsen expressly prohibited Debtor from pursuing Doe's identity from Domains By Proxy unless and until Debtor first complied with the *Best Western* standards:

> I'm going to follow the standard set forth in *Best Western*. The -- and that's because the requested discovery here raises issues similar to what courts had to face in *Mobilisa* and *Best Western*. While I acknowledge no complaint is pending, the debtor is certainly seeking information which could lead to a

Gingras Law Office, PLLC
4072 E. Mountain Vista Dr.
Phoenix, AZ 85048
(480) 639-4996

complaint, and indeed intends to augment the estate by such claims. The potential for chilling speech thus remains. Accordingly, I'm going to provisionally grant the motion for a protective order. I'm going to direct the debtor to follow the standards articulated by the district court [in *Best Western*] and by the court of appeals [in *Mobilisa*] before allowing the examination to go forward.

**Exhibit A**, Excerpts of Transcript of 5/28/2009 Hearing at 28:11–23 (emphasis added).

Both the intent and effect of Judge Nielsen's protective order were crystal clear—Debtor was prohibited from pursuing Doe's identity from DBP unless and until it brought a motion before this Court which complied with the standards set forth in *Best Western* and *Mobilisa* which would include demonstrating both the existence of a valid claim supported by sufficient evidence to overcome a Motion for Summary Judgment and showing that Doe's true identity was actually necessary to the prosecution of the claim.

Instead of complying with Judge Nielsen's order, Debtor apparently determined that it would be easier and faster to simply "outsmart" the Court and to do so by evading the protective order in a manner that allowed it to obtain the same information (Doe's identity) from the same source (DBP) that Judge Nielsen expressly found Debtor was not yet entitled to receive. This leads to a discussion of "Round #2".

### B. Debtor vs. Doe—Round #2

Apparently realizing that it had no legitimate claims against Doe but refusing to accept defeat and refusing to honor Judge Nielsen's order, Debtor concocted a new scheme to unmask Doe's identity. Rather than bringing a *Best Western*–compliant motion before this Court as Judge Nielsen instructed it to do, on August 6, 2009 Debtor brought a motion (Doc. #288) which requested leave to file a "Uniform Domain Name Dispute Resolution Policy (UDRP) Complaint" not against Doe, but rather against DBP.

For the Court's information, in a nutshell, a UDRP complaint is simply an expedited proceeding in the nature of an arbitration brought by a trademark owner against the owner of a website if the domain name at issue infringes the complainant's trademark *and* the use is not within any of the broad range of exceptions, the most important being

Gingras Law Office, PLLC
4072 E. Mountain Vista Dr.
Phoenix, AZ 85048
(480) 639-4996

non-commercial speech. *See generally Bosley Medical Inst., Inc. v. Kremer*, 403 F.3d 672, 680 (9th Cir. 2005) (recognizing that where defendant created website using Plaintiff's trademark which was used solely to engage in non-commercial criticism of plaintiff's business, the Lanham Act did not apply at all; "Bosley cannot use the Lanham Act either as a shield from Kremer's criticism, or as a sword to shut Kremer up."); *Penn Warranty Corp. v. DiGiovanni*, 10 Misc.3d 998, 1008, 810 N.Y.S.2d 807, 817 (2005) (concluding, "What is fatal to the cause of action at bar is that defendant's web site is not being used for any commercial purpose. The web site is not selling competing products or any goods whatsoever. The Lanham Act cannot be used as a pretext to stifle critics of goods or services by someone, such as a consumer advocate, who is not engaged in marketing or promoting a competitive product or service.")

In its pleading, Debtor made numerous representations to the Court arguing that the motion was necessary and proper. Among these, Debtor represented that "<u>[Debtor] is the owner of the Gorilla trademark</u>." Mot. (Doc #288) at 2:8 (emphasis added). Debtor also represented that the motion "involves protecting and marshalling the Debtor's <u>intellectual property assets</u>, and is therefore separate from the privacy issues addressed in [Judge Nielsen's] May 28, 2009 provisional protective order." *Id*. at 2:19–3:1 (emphasis added). Finally, Debtor represented to the Court that based on "<u>Domains By Proxy's past practice, Debtor expects that Domains By Proxy and its customer [Doe] will decide who among them should defend the ownership of the <savegorilla.com> domain name through the UDRP process</u>." *Id*. at 6:4–6 (emphasis added). Indeed, Debtor's motion was carefully crafted to give the impression that Debtor had no interest in obtaining Doe's identity from DBP and, in fact, that Debtor would go so far as to "resist efforts to substitute a third party [Doe] for Domains By Proxy as the named Respondent … ." *Id*. at 6:10–11.

As explained below, all of these representations were <u>false</u>, and they were clearly made in order to mislead the Court into granting Debtor permission to pursue Doe's identity in direct violation of Judge Nielsen's protective order. As such, Doe requests that this Court clarify and/or modify that order in such a manner that removes any question

Gingras Law Office, PLLC
4072 E. Mountain Vista Dr.
Phoenix, AZ 85048
(480) 639-4996

that the order is still in force and that Debtor is still not permitted to obtain Doe's identity from Domains by Proxy (or any other third party source), whether through the UDRP process or any other process, unless and until Debtor complies with the standards set forth in *Best Western* and *Mobilisa*.

In addition and in the alternative, Doe moves this Court for an order pursuant to Fed. Bankr. R. 9024 and Fed. R. Civ. P. 60(c)(3) and 60(c)(4) granting relief from the order dated August 26, 2009 (Doc. #314) on the basis that the order was procured by the Debtor's fraud/misrepresentation and/or that other circumstances justify relief.

## II. ARGUMENT

### A. The Protective Order Still Applies And Protects Doe Here

Having already brought this issue before Judge Nielsen and having prevailed fully, Doe contends that there should be no question but that the protective order entered in this case remains in place and that the order prohibits Debtor from obtaining Doe's identity from Domains by Proxy unless and until the terms of Judge Nielsen's ruling have been satisfied. Because Debtor has never made any effort to bring such a motion, the protective order should continue to fully protect Doe's identity.

Despite this and despite its representations to the contrary, Debtor has now taken the position in the UDRP proceeding that DBP is required to disclose Doe's true identity even though Doe is not a named party, even though the UDRP process does not permit discovery to be performed by either side, even though Doe's identity is not relevant to the merits of the UDRP dispute and even though the applicable rules expressly prohibit the substitution of parties after the UDRP complaint has been filed.

In response, Domains By Proxy (understandably not wanting to choose sides), has indicated that as part of its own policy, disclosure of Doe's true identity is not merely "permissive" as Debtor expressly represented to this Court. Rather, DBP has taken the position that disclosure of Doe's identity is mandatory unless this Court determines that the protective order issued by Judge Nielsen continues to protect Doe's identity from Debtor's efforts or unless other relief is granted.

Gingras Law Office, PLLC
4072 E. Mountain Vista Dr.
Phoenix, AZ 85048
(480) 639-4996

Immediately upon learning that Debtor's position was directly contrary to that which it has represented to the Court, undersigned counsel for Doe attempted to meet and confer with Debtor's counsel to resolve the matter. Because Doe's true identity is not relevant in any way to the merits of the UDRP proceeding, undersigned counsel suggested that the parties simply agree that DBP need not disclose Doe's true identity, and that Doe would file a response in the UDRP proceeding to which Debtor could object on any basis it believed appropriate. The tribunal hearing the case (the National Arbitration Forum or "NAF") would then decide the UDRP dispute on the merits and if Debtor prevailed, then the panel would find that the domain name should be transferred to it. This proposal would, if accepted, allow Debtor to complete the UDRP process and would allow Debtor to obtain the full (and only) relief available under that process—a decision that it was rightfully entitled to receive the disputed domain name.

Unfortunately, Debtor's counsel refused this offer and refused to agree that Doe's privacy could be maintained, thus leaving Doe with no alternative but to bring the instant motion. For that reason, Doe requests that the Court clarify and/or modify the protective order by ordering that Debtor is <u>not</u> permitted to obtain Doe's identity from DBP unless it first follows the requirements stated on the record by Judge Nielsen.

To be clear—because Doe is not a named party to the UDRP proceeding and because Doe's true identity is not material or relevant to the merits of that proceeding, the disposition of Debtor's UDRP complaint will not be prejudiced or impacted in any way if the Court grants Doe's request. Debtor's complaint will still be heard and disposed of on the merits with exactly the same result whether Doe's identity is disclosed or not.

In addition and as explained further below, if Doe's request is not granted and Doe's identity is revealed, Debtor will be subject to significant future litigation brought by Doe for abuse of process, among other things. Indeed, it is abundantly clear that Debtor has commenced the UDRP not for any legitimate purpose, but solely in an effort to thwart this Court's protective order and violate Doe's rights. For this reason, good cause surely exists to protect Doe's rights by clarifying/enforcing Judge Nielsen's previous order.

Gingras Law Office, PLLC
4072 E. Mountain Vista Dr.
Phoenix, AZ 85048
(480) 639-4996

Gingras Law Office, PLLC
4072 E. Mountain Vista Dr.
Phoenix, AZ 85048
(480) 639-4996

### B. The August 26, 2009 UDRP Order Should Be Vacated On The Basis Of Fraud/Misrepresentation By The Debtor

Pursuant to Fed. Bankr. R. 9024, the bankruptcy court may grant relief from any judgment or order for any of the reasons set forth in Fed. R. Civ. P. 60(b). Here, Doe moves the Court for relief from the August 26, 2009 order (Doc. #314) pursuant to Rule 60(b)(3) on the basis that the order was obtained by the Debtor's fraud/misrepresentations. In addition and in the alternative, relief should also be granted pursuant to Rule 60(b)(6) which permits relief for "any other reason justifying relief … ."

In this context, "Relief under Rule 60 is not dependent upon a showing of deliberate falsehood in regard to misrepresentation." *In re Halladay Enters., Inc.*, 5 B.R. 83, 86 (Bkrtcy.Tex. 1980) (citing *Bros, Inc. v. W. E. Grace Manufacturing Company*, 351 F.2d 208 (5th Cir. 1965). Rather, in the bankruptcy context such motions are "equitable in nature and committed to the discretion of the Court." *In re RVP, Inc.*, 269 B.R. 851, 854 (Bkrtcy.Id. 2001) (citing *Briones v. Riviera Hotel & Casino*, 116 F.3d 379 (9th Cir. 1997)).

Here, there is no question but that Debtor obtained the August 26, 2009 order by fraud. Specifically, Debtor made numerous affirmative representations to the Court which are provably false, and Debtor further withheld material information which, if disclosed, would have established that the requested relief was entirely groundless.

First, as explained above, Debtor's motion (and its UDRP complaint) was premised on a single key representation that: "<u>[Debtor] is the owner of the Gorilla trademark</u>." Mot. (Doc #288) at 2:8 (emphasis added). This representation is demonstrably false as reflected by Debtor's schedules filed in this matter on March 9, 2009 in which Debtor affirmatively represented that its ownership of "intellectual property" was "**<u>NONE</u>**".

**B6B (Official Form 6B) (12/07) -- Cont.**

In re GORILLA COMPANIES LLC, Debtor — Case No. 2:09-bk-02898-RJH (If known)

**SCHEDULE B - PERSONAL PROPERTY**
(Continuation Sheet)

| TYPE OF PROPERTY | NONE | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITH-OUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
| --- | --- | --- | --- | --- |
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |



In addition to affirmatively and actively misrepresenting the existence of trademark rights in the word "GORILLA", Debtor also failed to inform the Court that the stand-alone mark "GORILLA" is already the subject of at least two pending federal trademark registrations by entities wholly unrelated to Debtor. *See* **Exhibit B**. Moreover, the arbitrary word "GORILLA" is part of nearly 300 other pre-existing federal registrations which use that term. *See* **Exhibit C**. Furthermore, there are literally millions of websites currently using the word "GORILLA" in their domain names including, but not limited to: www.Gorilla.com, www.GorillaGlue.com, www.AirGorilla.com, www.MusicGorilla.com, www.GorillaTours.com, as well as www.SOSGorilla.com, www.StopGorilla.com, www.HelpGorilla.com and www.GorillaRescue.com. *See* **Exhibit D**. None of these sites are associated with either Debtor or Doe.

These facts make it impossible for Debtor to prevail in the UDRP action because it cannot establish either that it owns any trademark rights at all or that the www.SaveGorilla.com site is "confusingly similar" to any rights that Debtor may have in the word "GORILLA". This is so because according to the "anti-dissection" rule applicable in trademark cases, "a mark must be evaluated 'as a whole' and in its 'commercial context.'" *Buffalo Wings Factory, Inc. v. Mohd*, 622 F.Supp.2d 325, 333 (E.D.Va. 2007) (quoting *Worsham Sprinkler Co., Inc. v. Wes Worsham Fire Protection, LLC*, 419 F.Supp.2d 861, 877 (E.D.Va.2006)). Put differently, Gorilla cannot parse out a single word from its name and then attempt to claim exclusive ownership of that word, particularly where hundreds of other businesses are also using the exact same word.

Next, in its motion seeking leave to bring the UDRP complaint, Debtor affirmatively represented to the Court that based on "Domains By Proxy's past practice, Debtor expects that Domains By Proxy and its customer [Doe] will decide who among them should defend the ownership of the <savegorilla.com> domain name through the UDRP process." Mot. (Doc #288) at 6:4–6. Nothing in Debtor's motion explained to the Court that the disclosure of Doe's true identity was mandatory or that Debtor would try to argue such disclosure was mandatory.

Gingras Law Office, PLLC
4072 E. Mountain Vista Dr.
Phoenix, AZ 85048
(480) 639-4996

Despite this, immediately after the UDRP action was filed, Debtor took the exact opposite position, demanding that Domains By Proxy disclose Doe's identity even though Doe is not a named party to that case and even though Doe's identity has no bearing whatsoever on the outcome of the action. In an effort to resolve this issue, on September 16, 2009, Doe's counsel sent an email to Debtor's counsel, a copy of which is attached hereto as **Exhibit E.** In the email, the above points were explained and a suggested compromise was made that, among other things, Debtor agree that DBP need not disclose Doe's true identity in exchange for which Doe would allow Debtor to argue that Doe was not procedurally permitted to participate in the UDRP case (a position Debtor has also taken).

On September 17, 2009, Debtor's counsel responded in an email, a copy of which is attached hereto as **Exhibit F.** In its email, counsel took the position that Domains By Proxy was required to disclose Doe's identity. In fact, counsel further threatened to seek sanctions against DBP's parent company, GoDaddy, if it did not immediately comply with this demand:

> We expect GoDaddy to promptly comply with ICANN consensus policy and certify the respondent's identity to the NAF so that the NAF can commence this matter without further delay. Should that not happen shortly, we will have little choice but to seek relief from ICANN's Compliance Department.

This statement by Debtor's counsel unequivocally demonstrates that Debtor deliberately misrepresented its position to the Court when it stated, "Gorilla's proposed UDRP action to recover the <savegorilla.com> domain name is limited to the four corners of the Uniform Domain Name Dispute Resolution Policy," Mot. (Doc #288) at 7:17–18, because nothing in the UDRP Dispute Resolution Policy requires or even permits the disclosure of a non-party's identity as part of the proceeding.

Finally, in the course of the motion seeking leave to file the UDRP complaint, Debtor represented to the Court that the UDRP process was necessary to "protect and marshal" Debtor's assets. However, Debtor failed to disclose to the Court that the UDRP

Gingras Law Office, PLLC
4072 E. Mountain Vista Dr.
Phoenix, AZ 85048
(480) 639-4996

process is entirely non-binding and that either party to the proceeding can seek a *de novo* judicial declaration of rights at any time before or after the UDRP process is completed:

> **k. Availability of Court Proceedings.** The mandatory administrative proceeding requirements set forth in Paragraph 4 shall not prevent either you or the complainant from submitting the dispute to a court of competent jurisdiction for independent resolution before such mandatory administrative proceeding is commenced or after such proceeding is concluded … .

ICANN UDRP Policy § 4(k) (available at: http://www.icann.org/en/dndr/udrp/policy.htm). In other words, the UDRP process cannot result in the recovery of any property of the estate, *even if Debtor prevails.* Even if Debtor is permitted to complete the UDRP process and even if it wins, Doe can and will bring an independent civil action for declaratory relief in which the rights of the parties will be established *de novo* thus completely and automatically mooting the outcome of the UDRP arbitration.

This being the case, Debtor's pursuit of the UDRP complaint literally cannot and will not result in any possible benefit to the estate. In fact, the only benefit that Debtor can possibly obtain (at the expense to the estate of tens of thousands of dollars in wasted attorney's fees) is the same benefit that Judge Nielsen expressly determined it was not entitled to receive—Doe's true identity. Indeed, no matter which side prevails the process cannot produce anything other than a non-binding decision which either side may automatically vacate as a matter of right simply by filing a new civil proceeding (which Doe intends to do).

These facts as stated above are more than sufficient to entitle Doe to relief from the order in which this Court improvidently relied upon clearly false representations to authorize Debtor to commence the UDRP proceeding against DBP. For instance, in *In re RVP, Inc.*, 269 B.R. at 855–56, although the facts were different, the Court granted a motion for relief under Fed. R. Civ. P. 60(b) brought nearly a year after the chapter 11 debtor-in-possession filed an unopposed motion to assume executory contracts under 11 U.S.C. § 365 without disclosing the existence of a material default as required by 11

Gingras Law Office, PLLC
4072 E. Mountain Vista Dr.
Phoenix, AZ 85048
(480) 639-4996

U.S.C. § 365(b)(1). Even though the aggrieved party (a supplier) never objected to the debtor's motion, the Court found that the debtor's failure to disclose material facts was sufficient, standing alone, to justify relief from the order under Rule 60(b):

> There is a duty of candor toward the Court which includes an obligation to disclose material facts. It was inappropriate for Debtor to present its Motion or its Order allowing assumption under § 365(a) without disclosing or addressing the facts known to Debtor which were relevant to that issue, including those facts regarding the existence of outstanding defaults which had to be cured as a precondition of assumption. The Court concludes that this provides compelling reason to reconsider the Order.

*In re RVP, Inc.*, 269 B.R. at 855. The same is true here. Clearly, regardless of whether an objection to a motion is filed or not, the Arizona Rules of Professional Responsibility and the Local Rules of this Court require counsel to always exercise candor toward the Court by both refraining from making false statements of material fact and by disclosing all known material facts, law and information which may bear on the issue before the Court. *See* Ariz. R. Sup. Ct. 42, ER 3.3(a); Local Rule 9011-1. As explained above, both of these duties appear to have been violated here.

As such, Doe requests that pursuant to Fed. R. Civ. P. 60(b)(3) and 60(b)(6) (authorizing relief for "any other reason"), that the Court grant relief from the August 26, 2009 order (Doc. #314) authorizing Debtor to commence its UDRP dispute as follows—that order should be vacated in its entirety. With the benefit of the additional information set forth above, it is clear that the order was obtained fraudulently and for the sole purpose of avoiding the protective order previously entered in this case by Judge Nielsen without complying with the terms of that order. Such blatant gamesmanship may or may not be grounds for a contempt proceeding or other sanctions, but they must not be condoned by this Court particularly where irreparable harm to Doe may easily be avoided without prejudicing the Debtor's legitimate interests in any way.

If Debtor believes that it has any legitimate rights in the www.SaveGorilla.com site, the most appropriate course is for Debtor to bring an adversary proceeding seeking that relief under this Court's supervision. Such a proceeding would allow Debtor to

Gingras Law Office, PLLC
4072 E. Mountain Vista Dr.
Phoenix, AZ 85048
(480) 639-4996

obtain any relief it deems appropriate without requiring the parties to litigate the issue twice (as would presently be true if Debtor is allowed to continue with its UDRP complaint). Such an action would also allow Doe to seek appropriate protective relief as permitted by the First Amendment, *Best Western* and *Mobilisa*.

Finally, although Doe has already sought and received permission to proceed anonymously in this matter, in order to avoid any uncertainly, Doe renews that request as it relates to this motion. Such relief is proper for the grounds already stated on the record by Judge Nielsen at the June 28, 2009 hearing in this matter.

## III. CONCLUSION

For all of the foregoing reasons, Doe respectfully moves the Court for the orders and relief described above.

DATED this 18th day of September, 2009.

**GINGRAS LAW OFFICE, PLLC**

/s/David S. Gingras
David S. Gingras
Attorney for John/Jane Doe

Gingras Law Office, PLLC
4072 E. Mountain Vista Dr.
Phoenix, AZ 85048
(480) 639-4996

## CERTIFICATE OF GOOD FAITH

Undersigned counsel certifies that he has met and conferred in good faith with opposing counsel in an effort to resolve the disputes described herein without court action and that such efforts have been unsuccessful despite his best efforts.

DATED this 18th day of September, 2009.

**GINGRAS LAW OFFICE, PLLC**

/s/David S. Gingras
David S. Gingras
Attorney for John/Jane Doe

Gingras Law Office, PLLC
4072 E. Mountain Vista Dr.
Phoenix, AZ 85048
(480) 639-4996

**ORIGINAL E-FILED** and **COPY** of the foregoing mailed this 18th day of September, 2009 to:

John R. Clemency, Esq.
Daniel B. Pasternak, Esq.
Aaron C. Schepler, Esq.
Janel Glynn, Esq.
GREENBERG TRAURIG, LLP
2375 E. Camelback Rd., Ste. 700
Phoenix, AZ 85016
*Attorneys for Gorilla Companies LLC; Professional Event Management LLC; Gorilla Fuel LLC, and Blue Room Creative LLC*

Kelly W. Lewis, Esq.
Deputy General Counsel
GoDaddy.com, Inc.
14455 N. Hayden Road, Suite 219
Scottsdale, Arizona 85260

Office of the US Trustee
Attn: Larry Watson
230 N. First Ave., Ste. 204
Phoenix, AZ 85003

/s/David S. Gingras
David S. Gingras

Gingras Law Office, PLLC
4072 E. Mountain Vista Dr.
Phoenix, AZ 85048
(480) 639-4996